Myers *vs.* Smith and Barrick.

*Decree affirmed.*

(Decided 17th May, 1867.)

---

CHARLES E. MYERS *vs.* JOHN SMITH OF M., AND JOHN W. BARRICK.

*Vendor of Personal Property—Implied Warranty of Title— Measure of Damages—Evidence—Who may Levy a Distress.*

The vendor of personal property is bound to protect the vendee from all actions arising from circumstances anterior to the sale, of which the cause or the germ existed at the time of the sale: as debts chargeable on the thing sold, revenue duties to which the goods are liable, or such defects in the vendor's title as form a *labes realis.*

If rent be due and in arrear at the time of sale, the vendor is liable on his implied warranty of title, if the property sold be afterwards lawfully seized and taken by the landlord to pay such rent. And the measure of damages would be the amount of the purchase money, with interest from the day of payment to the finding of the verdict.

A party may maintain an action for money paid for another who is a stranger to him, provided such payment be compulsory: that is, if it be paid for the purpose of emancipating the person or property from an actual and existing duress imposed upon it.

A sold to B his interest in a crop of wheat, growing upon the farm of C, the landlord of A; one-half of the purchase money was paid in cash, and a written obligation was given for the balance. After the wheat had been reaped, and while it remained in the field, it was seized and sold by the bailiff of C, under a distress for rent in arrear, due by A. Subsequently B instituted suit to recover back from A the cash payment. HELD:

Myers *vs.* Smith and Barrick.

That it was essential for B, whether he claimed under the implied warranty of title, or sought to recover for money paid in satisfaction of the debt of A, to establish the fact of a lawful seizure under the distress—and the only legal evidence of this were the papers showing the proceedings in conformity with the requirements of the Code: parol testimony being inadmissible for this purpose, without laying a proper foundation to justify the introduction of secondary proof.

And that it was competent for A to show that at the date of the original sale of his interest in the crop of wheat, and at the date of the levying of the distress, and also at the date of the sale under the distress, there was no rent in arrear.

That it would not be necessary for B to rescind or offer to rescind the contract, in order to enable him to recover, provided there existed no other objection to his suit.

The existence of the contract, evidenced by the written obligation given by B to secure the balance of the purchase money, whereby he was expressly entitled to retain out of such balance any loss he might incur by reason of any person claiming the property purchased, constitutes no defence to this action, except in so far as the question of damages is concerned; the said balance, if it remain unpaid, being first applicable to the reduction of B's demand.

Though a distress for rent is a remedy by the act of the party, and a landlord may constitute any person as his bailiff to make it; yet when he causes the warrant to be directed to the Sheriff, that officer may execute it by his deputy, whose acts must be regarded as those of the Sheriff himself.

APPEAL from the Circuit Court for Frederick County.

In the trial of this case below, the following exceptions were taken by the appellant:

*1st Exception:* The plaintiffs proved by James M. Harding, that he was present on an occasion when the plaintiffs and defendant were together, and then asked witness whether he saw money paid by the plaintiffs to defendant; the defendant here interposed and asked witness whether the money which he saw paid, if any such thing occurred, was paid on account of or in pursuance of a written contract between the plaintiffs and defendant. but the plaintiffs objected to the admissibility of said question by the

Myers *vs.* Smith and Barrick.

defendant at the time it was asked, and objected to the same being answered before the question in chief, put by them, was answered; and the Court (NELSON, J.) sustained the objection and refused to allow said question to be put and answered at such time. To this ruling the defendant excepted.

*2d Exception:* The plaintiffs further proved by said Harding, that he saw them pay the defendant $420, on or about 31st of May, 1864; they then asked witness for what purpose said money was paid? The defendant here asked witness whether the money was paid on account of or in pursuance of a written paper? The witness said it was not; witness answered that there was a written paper prepared in or about that time; in reply to a question from the Court, witness said he was not certain whether the money was paid before or after the paper was prepared; to the best of his recollection the paper was prepared before the money was paid, but was not signed until after the money was paid, and the paper was prepared and signed all on the same occasion. The plaintiffs then asked witness whether the money which he saw paid by them to defendant was paid in pursuance of or on account of that written paper? The defendant objected to said question being put and answered without the production of the written paper; but the Court overruled the objection, and allowed said question to be asked, and said testimony to be given. To this ruling the defendant excepted.

*3d Exception:* The plaintiffs further proved by said Harding, that the $420 mentioned, was paid on account of the wheat crop growing on the farm of Col. Kunkel, purchased by them from Myers; said witness proved on cross-examination, that on the 31st May, 1864, the parties appeared before him, the $420 was paid and a paper writing was entered into, both were in one transaction, both were for the purchase by plaintiffs from defendant of

his interest in the grain crop mentioned ; they contracted to give Myers $840 for it; the paper entered into was the same now shown to witness :

"$420.00.          FREDERICK COUNTY, May 31st, 1864.

"Ninety days after date, we or either of us promise to pay Charles E. Myers, four hundred and twenty dollars, being the balance due on the crop of wheat purchased by us from said Myers with this express understanding and agreement, that should loss or difficulties occur from any cause whatever by any person or persons claiming an interest or portion of the share of said Myers' interest in the wheat crop aforesaid, on the farm of Col. Jacob M. Kunkel, on which Myers lately resided, then and in that event such loss or deduction to be taken from the amount to be paid by this note.

" JOHN SMITH of M.,<br>" JOHN W. BARRICK."

The $420 was paid in part of said $840, and the paper now shown was given; that was the whole contract,—all that was done—the payment of the money and this paper given, and a written receipt given by Myers to the plaintiffs for the $420. On re-examination by plaintiffs, they proved that said paper was prepared in connection with the contract for the sale of the grain; $420, the half of the purchase money, was paid in cash, and the paper shown was given for the balance, that there was a written receipt given by plaintiffs for the $420 paid, that witness wrote the receipt and had no other connection with the $420 paid, to his recollection, than writing the receipt, the receipt was signed by the defendant and delivered by him to the plaintiffs. They proved by John A. Steiner, that he was sheriff of Frederick county in 1864. The plaintiff's counsel then asked witness whether a distress warrant against the defendant was placed in his hands at

any time in 1864, and if so, by whom and at what time? But the defendant objected to said question on the ground that it was not competent for the witness to characterize a paper as a distress warrant, but that the same must be first produced, and after the Court had determined whether or not the paper was a distress warrant then show it to the witness; and that only then it would be competent for the witness to speak of the paper; but the Court overruled the objection and allowed said question to be asked and answered. To this ruling the defendant excepted.

*4th Exception:* The plaintiffs further proved by said witness, Steiner, that on the 23d day of June, 1864, Col. Kunkel came to his office and handed him a distress warrant against the personal property of the defendant. The plaintiffs' counsel then proposed to prove by said witness, by parol, that Col. Kunkel placed in his hands a distress warrant against the defendant for rent claimed to be due to him, Kunkel, from the defendant, and that the witness, acting under said warrant, on the 6th day of July, 1864, seized certain wheat which had been cut and was standing in shocks on the Surry farm of said Kunkel, as the property of the defendant, and sold the same on the 11th day of July, 1864, to satisfy said claim for rent due; but the defendant objected to the admissibility of said proof without the production of the distress warrant referred to, or accounting for the non-production thereof; but the Court overruled the objection, and allowed the testimony offered to be given. To this ruling the defendant excepted.

*5th Exception:* The plaintiffs further proved by said Steiner, that on the 5th day of July, 1864, he went on the Surry farm; on the 6th day of July, 1864, he levied a distress on four fields of wheat in the shock; thinks that was all the wheat standing on the farm at that time; in making the levy he was acting as Col. Kunkel's bailiff;

he was sheriff at the time he levied the distress for rent against the defendant in this suit; he did not sell the wheat himself; H. F. Steiner (his deputy, as sheriff of Frederick county,) sold the wheat for him; he was not present at the sale; he was not in the county at the time; he received the purchase money for the wheat and paid it over to Ezra Houch, agent of Col. Kunkel; when he levied the distress he notified the plaintiffs that the property was in his possession and they could not remove it. On cross-examination, said witness testified that the distress warrant spoken of in his testimony in chief was in writing; the defendant then by his counsel moved the Court to strike out from this cause all the evidence of the said Steiner, relating to the distress warrant spoken of, and of the proceedings of the witness under and in pursuance of said distress warrant, and to instruct the jury that the same could not be considered by them, because the said distress warrant was in writing, and parol evidence relating thereto, and to proceedings thereunder, is not admissible unless said distress warrant shall be offered in evidence; but the Court overruled the motion, and declared that said evidence was admissible. To this ruling the defendant excepted.

*6th Exception:* On further cross-examination of said witness, Steiner, he proved that the rent spoken of in his testimony-in-chief, for which he levied said distress, and the wheat mentioned was sold, was in the form of a claim or account for rent in writing, when the said distress warrant was handed to him by said Kunkel, and was on the same sheet of paper with the distress warrant. Whereupon the defendant, by his counsel, moved the Court to strike out, and to withdraw from the jury, all the evidence of said witness relating to said claim for rent, because the same is not competent evidence without the production of said written claim for rent, or accounting by the plaintiffs

for its non-production; but the Court overruled the motion and refused to withdraw said evidence from the jury. To this ruling the defendant excepted.

*7th Exception:* After the aforegoing bills of exception had been signed and sealed, the plaintiffs closed and rested their case; the defendant then proved by Martin Snyder that the defendant was not on the farm in question at the time when the distress warrant spoken of by the witness Steiner was levied, or when the wheat mentioned was sold, but that said wheat was in possession of the plaintiffs on said farm when said distress was levied, and that at the sale made by H. F. Steiner, they purchased said wheat and remained in possession of the same afterwards, and finally disposed of it, and that at the time when said distress was levied the said wheat was standing in shocks on said farm, and had been cut and placed in said shocks by them, and that the said wheat remained in exactly the same condition in said shocks at the time when the sale thereof was made by the said H. F. Steiner, and continued in the same shocks in the same fields on said farm after said sale until the same was threshed and hauled away from said farm by the plaintiffs, who purchased the same at said sale. And further proved by H. F. Steiner, that he is the same person mentioned in the testimony of John A. Steiner; that on the 11th day of July, 1864, he sold at public sale the wheat in question; that he announced for sale and sold all the interest of the defendant in the wheat standing in shocks in the four fields on the Surry farm of Col. Kunkel, and that the plaintiffs in this cause became the purchasers thereof at said sale. And offered to prove by Edward A. Shriver that at the time when said distress for rent spoken of by the witness Steiner was levied on the wheat in question, and also at the time when the said wheat was sold by said H. F. Steiner, and also on the 31st day of May, 1864, the defendant did not owe the said Kunkel any rent, or any

amount whatever for rent, and that the defendant had fully paid and satisfied to said Kunkel, all moneys and produce due to him from the defendant for rent; but the plaintiffs by their counsel objected to the admissibility of said proof offered by said witness, Shriver, and the Court sustained the objection and refused to permit the testimony offered to be given to the jury. To this ruling the defendant excepted.

*8th Exception:* The testimony on both sides being closed, the plaintiffs offered the following prayers:

1st. If the jury find from all the evidence in this cause that the defendant agreed with the plaintiffs to sell them his interest in the crop of wheat growing upon the farm of Col. J. M. Kunkel, called the "Surry farm," and put out on said farm in the year 1863, for the sum of $840, and shall further find from the evidence aforesaid, that on or about the 31st of May, 1864, the said defendant and plaintiffs met in the City of Frederick, when, in pursuance of the said agreement to sell said crop of wheat aforesaid, the said plaintiffs paid to the said defendant the sum of $420 as part payment for his interest in said crop of wheat; and shall further find as aforesaid, that said interest of the defendant in said crop of wheat was seized upon said farm by John A. Steiner, under a distress warrant, placed in his hands by said Kunkel, for rent claimed to be due from said defendant to said Kunkel as rent of said farm, and that the interest of said defendant in said crop was sold to satisfy the claim for the rent aforesaid, that then the consideration for which the said $420 was paid by said plaintiffs to said defendant has failed, and the said plaintiffs are entitled to recover in this action.

2d. That the measure of damages in this case is the sum of money which the jury shall find, from all the evidence in this case, to have been paid by the plaintiffs to the defendant for his interest in said wheat crop, with

Myers *vs.* Smith and Barrick.

interest from the day of such payment to the finding of the verdict in this case.

And the defendant offered the following prayer:

That there is no sufficient legal evidence in this cause from which the jury can find all the facts stated and set forth in plaintiffs' first prayer. And the Court granted both the plaintiffs' prayers and instructed the jury accordingly, and rejected the defendant's prayer. To this ruling the defendant excepted.

*9th Exception:* The defendant offered the following prayers:

1st. That under the pleadings and the evidence in this cause the plaintiffs are not entitled to recover, because they have offered no sufficient evidence from which the jury can find that any sum of money is due and owing to them from the defendant under any count in the declaration.

2d. That the plaintiffs have offered no sufficient evidence of any cause of action in this case to entitle them to a verdict under the pleadings and the evidence in the cause.

3d. That the plaintiffs have offered no evidence tending to show that the title of the defendant to the wheat sold to them on or prior to the 31st May, 1864, was defective at the time of said sale, and no evidence of a breach of an implied warranty of said title, and cannot recover in this case under the pleadings and evidence.

4th. That the plaintiffs have offered no sufficient evidence to prove that the title to the wheat in question transferred to them by the defendant was invalid at any time subsequent to said sale on or prior to the 31st May, 1864, so as to entitle them to charge the defendant and to recover in this action.

5th. That no legal and sufficient evidence has been offered to the jury from which they can find that a legal and valid distress for rent due from the defendant was

levied on said wheat sold to the plaintiffs at any time after said sale, so as to entitle them to recover under the pleadings and evidence in this case.

6th. That no sufficient evidence has been offered to the jury from which they can find that the title of the plaintiffs to the wheat in question, derived from the defendant, was defected or impaired by any legal and valid claim to said wheat by any other person, after the sale thereof by the defendant to the plaintiffs, so as to entitle them to recover under the pleadings and evidence in this case.

7th. That no sufficient evidence has been offered to the jury from which they can find that the enjoyment by the plaintiffs of the title to the wheat in question, derived from the defendant, was hindered or interrupted by any legal and valid claim to said wheat by any other person, so as to entitle them to recover in this action under the pleadings and evidence.

8th. That no sufficient evidence has been offered to the jury from which the jury can find that the title of the plaintiffs to the wheat in question, derived from the defendant, was impaired or defected or divested·by any legal and valid process or proceeding, so as to entitle them to recover under the pleadings and evidence in this case.

9th, That the said distress for rent, testified to by the witness John A. Steiner, was void for any purpose of divesting the plaintiffs' title to the wheat in question, because there is no proof that the landlord or his agent who may have been authorised to distrain for rent due to said landlord, did, previous to making the distress, make oath before some justice of the peace of the county where the premises lay, or where the said landlord or his said agent resided, that the tenant of said landlord was justly and *bona fide* indebted to him in the sum of ——— dollars and ——— cents, specifying the amount which the said landlord claimed to be due in dollars and cents, if the

said distress were for a certain money rent, or that the said landlord was justly and *bona fide* entitled to the quantity or proportion of the produce claimed by said landlord, if the said distress were for grain or produce, for rent in arrear and already due to him, and that he, the said landlord, had not received, directly or indirectly, any part or parcel of said rent claimed to be due and in arrear, except (if any) the credits given, to the best of his knowledge and belief, and that the plaintiffs are not entitled to recover in this action on the ground that said alleged distress for rent, defected, impaired or interfered with their title to said wheat acquired from the defendant.

10th. If the jury shall believe from the evidence that the distress in question was for grain or produce, then the plaintiffs are not entitled to recover in this action, because no sufficient proof has been offered that the bailiff of the landlord, or person authorized to levy said distress, did summon and cause to be sworn two disinterested persons, who did under oath estimate the money value of the specific amount or quantity of grain, or other produce or proportion of the crops agreed upon as rent, between the said landlord and the defendant as tenant.

11th. That there was no sale of the wheat in question under or in pursuance of the said pretended levy of a distress for rent by the said John A. Steiner, and it was not competent for said Steiner, acting as bailiff, to deputize H. F. Steiner or any other person to sell said wheat, so as to interrupt or divest the plaintiffs' title to said wheat, and to entitle them to recover in this action under the pleadings and evidence.

12th. That if any legal sale were made of the wheat in question under said distress, such sale was of the interest of the defendant therein only, and that the defendant having long prior to said distress and sale, sold his interest in said wheat to the plaintiffs, had no interest therein at the time of said distress levied and sale made, and that

the said pretended sale, under said distress, cannot operate to charge the defendant so as to entitle the plaintiffs to recover under the pleadings and evidence in this case.

13th. That the plaintiffs cannot recover under the pleadings in this cause, because no evidence has been offered to prove that they rescinded or offered to rescind their contract or purchase from the defendant of the wheat in question, at any time before this suit was brought.

14th. That even if the distress for rent testified to in this cause had been in all respects valid and legal, and if the wheat in question had been duly and legally sold under a valid distress for rent, and the title of the plaintiffs thereto acquired from the defendant had been divested by such seizure and sale under said distress for rent; yet the plaintiffs are not entitled to recover in this case under the pleadings and evidence, because they have offered no proof that before, or at the time of such seizure or levy of said distress, or before or at the time of such sale, or at any other time before this action was brought, they rescinded or offered to rescind the contract for the purchase and sale of said wheat made between the plaintiffs and defendant on or prior to the 31st May, 1864.

15th. That the plaintiffs are not entitled to recover in this action the whole sum of $420, paid by them to the defendant on the 31st May, 1864, because they have offered no sufficient evidence from which the jury can find that they have been divested of all their title to and interest in the wheat in question by any proceedings or sale had under the distress for rent offered in evidence by them ; that if the jury find from all the evidence that the wheat in question was sold by the defendant to the plaintiffs on the 31st day of May, 1864, or prior thereto, and that the plaintiffs on said day paid to the defendant $420, on account of the purchase money of said wheat, and gave him a written note or agreement which provided for the payment of the remainder of the purchase money, and

that they went into possession of said wheat, and cut the same and put it in shocks on the farm in question, and that whilst it remained in said condition John A. Steiner, as bailiff of Col. J. M. Kunkel, levied a distress thereon for rent, and afterwards that H. F. Steiner sold all the interest of the defendant in said wheat, the said wheat still remaining in the same condition, and that the plaintiffs became the purchasers of all the interest of said defendant at said sale, and removed and threshed the same and finally sold and disposed thereof, then they are not entitled to recover in this action the amount paid on the 31st May, 1864, in cash by them to the defendant on account of the purchase money of said wheat.

16th. If the jury shall believe from the evidence that the contract between the plaintiffs and defendant for the purchase and sale of the defendant's interest in the wheat in question, was made on the 31st day of May, 1864, and was as testified to by the witness Harding, then they are not entitled to recover under the pleadings and evidence in this case the money paid in cash on said 31st of May, 1864, by them to the defendant, because the said contract contained an express written provision for any loss they might sustain by reason of any claim which might be made on said interest of defendant in said wheat by any person, or any loss which they might sustain from any cause, and they cannot recover on the ground of an implied warranty.

17th. That if the jury shall believe from the evidence that the contract of purchase and sale of the defendant's interest in the wheat in question was made or consummated between the plaintiffs and defendant on the 31st May, 1864, and that the same was not rescinded or offered to be rescinded by the plaintiffs at any time before this suit was brought, then they are not entitled to recover in this action under the pleadings and evidence.

The Court rejected all of these prayers, and the defend-

ant excepted, and the verdict and judgment being in favor of the plaintiffs, he appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and WEISEL, J.

*Wm. B. Nelson, Oliver Miller* and *Wm. P. Maulsby*, for the appellant:

1st. The object of the suit on the part of the appellees was to recover back the sum of $420, paid by them to the appellant on account of his interest in a crop of wheat growing on land of which he was tenant, and sold by him to them on the 31st May, 1864, for $840. The ground on which this recovery is sought, is a failure of consideration, for which the $420 was paid; the said wheat having been afterwards sold by the sheriff, under a distress for rent, claimed to be due and owing from the appellant to Col. Kunkel. In order to make out a failure of consideration entitling them to recover back the $420 paid in cash, it was requisite to show that the claim for rent under which the distress was levied, was equal to the whole $840, or at least exceeded the amount of the note given for the balance. If it were less than the amount of the note, then, by the express terms of their contract, it was to be deducted from the amount of *that note*. But they have not shown any thing of the kind. They have merely shown that a distress warrant was levied on the wheat for rent in arrear to Kunkel, and that the wheat was sold thereunder on the 11th of July, 1864. They have not shown what amount of rent was in arrear, nor for what price the wheat was sold. Under their contract it was their duty to have paid the rent in arrear if less than the amount of the note, and then have deducted the same from the note. To make out a case of total *failure of consideration*, so as to enable them to recover back the whole $420 cash payment, they should have proved that

the rent in arrear was $840, or that the *wheat sold for that sum*. *Parsons on Cont.*, 385, 386.

2d. The appellant at the time of sale undoubtedly had *an interest* in the wheat crop, which he could sell, though that interest may have been subject to the claim of the landlord for rent. The plaintiffs purchased with their eyes open, and in the contract made express provision for the contingency of such a claim being asserted. They bought what the appellant had a *clear right to sell*, and the fact that they paid too high a price for it in the absence of fraud, is no ground for relief either in equity or at law, and certainly does not make out a case of total failure of consideration. *Parsons on Cont.*, 341, 342.

3d. But the fact that any distress warrant was ever issued, and any sale ever made thereunder, has not been established in this case by any legal and competent evidence. The warrant to distrain, and the account are both required by the Statute to be in writing, and in the absence of proof that they have been lost or destroyed, parol proof of them is entirely inadmissible. The Court below was therefore wrong in its rulings in the 3d, 4th, 5th and 6th exceptions. *Code Pub. Gen. Laws, Art.* 53, secs. 8, 9 ; *Starkie on Evidence, (Sharswood Ed.,)* 581.

4th. The ruling in the 7th exception, excluding evidence that no rent was due from the appellant to Kunkel, either at the time the appellees purchased the wheat from the appellant, or at the time the same was sold by the sheriff under the alleged distraint for rent, was erroneous. There was no proof as to the amount of rent claimed, or of the amount for which it was sold by the sheriff, and it was proved *that the appellees themselves* became purchasers of the wheat at the sheriff's sale. Now evidence that no rent was at that time due, was clearly admissible to show collusion between the landlord and the appellees to deprive the appellant of the benefit of his sale, and if this could be established, surely the

appellees could not be allowed to take advantage of their own wrong, in order to make out a failure of consideration of their own contract with the appellant.

5th. The whole effort on the part of the appellees was to make out a *sale* under a "distress warrant" for rent in arrear due to the landlord:—in other words, to make out a failure of consideration by showing eviction under a paramount title. Now the Code of Pub. Gen. Laws, Art. 53, Sec. 16, declares, that every distress for rent made contrary to the provisions of that Article, and every sale made under and by virtue of such distress, shall be *absolutely illegal and void*. The appellees surely could not set up an *illegal* or *void sale* to make out their case of eviction by paramount title, and consequently, a failure of consideration for their contract. To make out their case they must prove a distress levied, and a sale thereunder in pursuance of the provisions of the Code. This they have utterly failed to do, for :—

1st. They offered no proof of the affidavit required by Sec. 8, Art. 53. *Giles vs. Ebsworth & Hays,* 10 *Md. Rep.,* 333 ; *Cross vs. Tome,* 14 *Md. Rep.,* 247.

2d. There was no proof that the wheat distrained on was appraised by two disinterested persons as required by Sec. 11.

3d. The sale was not made at the time or in the mode required by the Statute of 2 *W. & M.,* ch. 5.

That statute authorises the sale of goods distrained for rent *after* five days from the making of the distress and *notice* thereof, as required thereby. Here the distress was levied on the 6th, and the *sale* was made on the 11th of July, 1864, and there is no proof that any *notice* was given to the appellant or left on the premises. It was not therefore made *after* five days from the making of the distress and *notice*.

4th. The sale was not made by the proper party. The sheriff was not acting in this matter as *sheriff*, so as to

Myers *vs.* Smith and Barrick.

authorise his deputy to act for him, but simply as *bailiff* of the landlord. The landlord could have authorised any other party to levy the distress. The sheriff was acting by virtue of a special delegation of authority, which he could not delegate to any one else.

*Grayson Eichelberger* for the appellees :

In the sale of personal property there is an implied warranty of title, and where the consideration fails, the vendee may recover of the vendor, on the implied warranty, any purchase money he may have paid the vendor. *Mockbee's Adm'r vs. Gardner,* 2 *H. & G.,* 176; *Story on Contracts,* sec. 833 ; *Story on Sales,* sec. 367 ; *Parsons on Contracts,* 458, *n; Defreeze vs. Trumper,* 1 *Johns. Rep.,* 274 ; *McCoy vs. Artcher,* 3 *Barbour Sup. C. Rep.,* 323 ; *Robinson vs. Anderton, Peake's Nisi Prius,* 94.

The validity of Col. Kunkel's claim for rent could not be controverted nor inquired into in this case. If the appellant desired to controvert either the claim for rent, or the regularity of the mode of asserting it, he should have done so in another way, and by another proceeding initiated by himself. Neither can be attacked in this collateral way. It is sufficient for the appellees to show a failure of the consideration, and a breach of the implied warranty of title.

The sale as made by deputy was within the provisions of the Statute of 2 *W. & M.,* ch. 5, both as to time of sale and as to the officers by whom made. *Wallace and others vs. King,* 1 *H. Black. Rep.,* 13 ; *Giles vs. Ebsworth & Hays,* 10 *Md. Rep.,* 333.

BARTOL, J., delivered the opinion of this Court.

This suit was instituted by the appellees. The declaration contains the common money counts, and issues were joined on the pleas "that the defendant was never indebted as alleged" and "never promised as alleged.'

In the course of the trial below, the appellant took nine bills of exceptions, seven of them to the ruling of the Circuit Court on questions of evidence; the eighth to the granting of two prayers of the appellees and the rejection of one offered by the appellant; and the ninth to the rejection of seventeen prayers offered by the appellant.

In disposing of this appeal it will not be necessary to pass upon the several exceptions, and the prayers separately, as many of them present the same questions of law.

The proof shows that in May, 1864, the appellant sold to the appellees *his interest* in a crop of wheat then growing upon the farm of Col. Kunkel. The appellant had been tenant of Kunkel, and claimed to be entitled to the growing crop, subject to the claim of the landlord for rent, which we infer was payable in kind, though the terms of the tenancy are not distinctly proved.

The whole price agreed on for the appellants' interest or share was $840, of which $420 was paid in cash, and for the residue the following note or contract was given:

"$420.00.          FREDERICK COUNTY, May 31st, 1864.

"Ninety days after date, we or either of us promise to pay to Charles E. Myers, four hundred and twenty dollars, being the balance due on the crop of wheat purchased by us from said Myers, with this express understanding and agreement, that should loss or difficulties occur from any cause whatever, by any person or persons claiming an interest or portion of the share of said Myers' interest in the wheat crop aforesaid, on the farm of Col. Jacob M. Kunkel, on which Myers lately resided, then and in that event, such loss or deduction to be taken from the amount to be paid by this note.

"JOHN SMITH, of M.
"JOHN W. BARRICK."

In July, 1864, after the wheat had been reaped by the appellees, and while it remained in the field, the appellees

Myers *vs.* Smith and Barrick.

allege that it was seized and sold by the bailiff of Kunkel under a distress for rent in arrear, due by the appellant. Exception was taken to the character of the evidence offered to prove the distress and the proceedings thereunder, which will be noticed hereafter; assuming, however, for the present, that the seizure and sale under the distress were proved by competent evidence, we shall first consider whether the two prayers of the appellees ought to have been granted.

The plaintiffs state the ground of their action to be a breach of the implied warranty of title of the vendor, and the consequent failure of consideration for which the money was paid, and they seek to recover back the purchase money so paid. Accordingly, the hypothesis of their first prayer is that if they purchased in May, 1864, from the defendant, his interest in the crop of wheat, and paid him $420 as part of the purchase money; and afterwards, in July, 1864, the interest of the defendant in the crop was seized by the landlord for rent in arrear due by the defendant; that this constitutes a breach of the implied warranty of title, and shows a failure of the consideration for which the money was paid, which entitles the plaintiffs to recover.

By the second prayer the measure of damages is declared to be the sum of money originally paid, in part of the price, with interest from the time of payment. It is perfectly manifest that this theory of the case cannot be supported consistently with well established rules of law.

It by no means follows that because the property sold in May, was afterwards, in July, seized and sold under a distress for rent due by the defendant, the implied warranty of title was broken. The breach of that warranty depends upon the title of the vendor at the time of sale, and not upon matters arising subsequently. The prayer does not state, nor is there any evidence to show that the

rent, or any part of it, for which the distress was levied, was due and in arrear at the time of the sale. If it became due afterwards, then there existed at the time of the sale nothing to impair the right of the defendant to sell his interest; and a seizure and sale by the landlord afterwards for rent in arrear subsequently becoming due, does not in any sense constitute a breach of the implied warranty of title, for which the vendees could recover in an action on the warranty. See *Giese vs. Thomas*, 7 *H. & J.*, 459; *Buckey vs. Snouffer*, 10 *Md. Rep.*, 149. The ground of such action is always an eviction by one having a superior title to the vendor, or some lien existing at the time of the sale.

In the excellent treatise of the late Professor Bell "on the Contract of Sale of Goods and Merchandise," 50 Law Lib. 50, (95 marg.) the law is clearly and concisely stated thus:

"The seller is bound to protect the buyer from all evictions arising from circumstances anterior to the sale, of which the cause or the germ existed at the time of the sale; as debts chargeable on the thing sold, revenue duties to which the goods are liable, or such defects in the seller's title as form a *labes realis.*"

If rent were actually due and in arrear at the time of the sale in this case, and the property sold was afterwards lawfully seized and taken by the landlord to pay such rent, then the appellant would be liable on his implied warranty of title; this was decided in *Dunlop vs. Earl of Dalhousie*, in Scotland, in 1828, affirmed by the House of Lords, 4 *W. & S.* 420. Though that decision was under the Scottish Law, we are of opinion that the same principle must be recognized in Maryland, as it is within the general rule above cited. The rights of the landlord to distrain existing at the time of the sale, would constitute a liability in the nature of a lien upon the property, although as settled in Buckey *vs.* Snouffer, not an actual

or consummate lien, yet an inchoate claim or right which might afterwards be enforced; and therefore a *labes realis* against which the purchasers would be entitled to protection under the implied warranty, and in this aspect of the case the measure of damages would be as stated in the appellees' second prayer. But as we have said, the appellees' first prayer does not state that the rent for which the property was seized was due and in arrear at the time of the sale, and was therefore erroneously granted. If it became due afterwards, the seizure and sale by the landlord did not constitute a breach of warranty for which the appellees would be entitled to recover upon the warranty ; although if these facts were established by legal and competent evidence, the present suit might be maintained on other grounds; not for a breach of the implied warranty of title, but for money paid, laid out and expended by the plaintiffs for the use of the defendant. It is very clear that if the property of the appellees were lawfully seized and taken to pay the appellant's debt, they would be entitled to maintain this action, without reference to the fact whether the property had been purchased from the appellant or not; and in such case the measure of damages would be the value of the property so taken, with interest thereon, or the amount which they were compelled to pay in order to emancipate it from the lawful claim of the landlord, with interest from the time of payment. In this case, however, the damages to be recovered, whether brought within the warranty or otherwise, would be diminished by first deducting the sum or balance of the purchase money secured by the note, if the same remain unpaid, which by the terms of the contract is first to be applied to such a demand. The law is well settled that a party may maintain an action for money paid for another who is a stranger to him, provided such payment be compulsory; that is, when it is paid for the purpose of " emancipating

the person or property from an actual and existing duress imposed upon it.'' In *Mayor, &c., of Baltimore vs. Lefferman,* 4 *Gill,* 425, the doctrine on this subject is fully considered and the cases collected. See also *Dorsey vs. Smith,* 7 *H. & J.,* 366; *Turner vs. Egerton,* 1 *G. & J.,* 430. Under the rulings in those cases we are of opinion that the appellees would be entitled to recover in this action upon the facts stated in their first prayer, if established by legal and competent evidence; and that the measure of damages would be as we have before stated.

Having made these general observations on the law governing this action, we shall proceed to notice the questions presented by the bills of exceptions so far as they are material to the decision of this appeal.

The first and second exceptions are not material, as the written paper therein referred to was afterwards produced, and contains nothing to show that the evidence of the witness Harding was inadmissible. The ruling of the Circuit Court as stated in these exceptions is affirmed.

The 3d, 4th, 5th and 6th exceptions all relate to the evidence offered by the appellees to prove the seizure and sale under the distress, and the objection is taken that the same could not be proved by parol.

In the opinion of this Court, this objection to the evidence is well taken. Whether the appellees claim under the implied warranty, or seek to recover for money paid in satisfaction of the appellant's debt, it is essential for them to establish the fact of a lawful seizure under the distress; and the only legal evidence of this are the papers showing the proceedings in conformity with the requirements of the Code: parol testimony is inadmissible for this purpose, without laying a proper foundation to justify the introduction of secondary proof. See *Giese vs. Thomas,* 7 *H. & J.,* 459; *Sanderson's Ex'rs vs. Marks,* 1 *H. & G.,* 252; *McKee's Adm'rs vs. McKee's Adm'rs,* 16 *Md.,* 516.

Myers *vs.* Smith and Barrick.

Here the ground of the action is that the appellees were deprived of the property purchased, by a party having a lawful right to seize it, upon a claim or lien existing at the time of the purchase; or that they were compelled, in order to emancipate their property from a legal claim thereon against the appellant, to pay a sum of money to such claimant ; in either case the *onus* is on them to show that such claim existed and was enforced according to law. The mere fact of the seizure and sale by the landlord is not sufficient; being made under color of a distress for rent in arrear, in which the proceedings are required to be in writing, and in conformity with law; it cannot be proved by parol.

For the same reason the proof offered by the appellant in the 7th exception, that there was no rent in arrear at the time of the alleged distress, was competent and ought to have been admitted.

The same question is presented by the appellant's prayer in the eighth exception, and his 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th and 10th prayers in the ninth exception, and the Court below erred in rejecting them.

The eleventh prayer raises the question of the power of the deputy sheriff, acting under the sheriff's authority, to make sale of property seized by the sheriff under a distress warrant to him directed. On this point we think the appellant's counsel are in error. Though a distress for rent is a remedy by the act of the party, and a landlord may constitute any person as his bailiff to make it ; yet where he causes the warrant to be directed to the sheriff, that officer may execute the warrant by his deputy, whose acts must be regarded as those of the sheriff himself.

The general observations we have already made with regard to the principles governing this action, renders it unnecessary to express an opinion upon the other prayers of the appellant.

We have said that the appellees failed to adduce competent and sufficient proof to entitle them to recover in either aspect of the case; but as that proof may be supplied upon a new trial, and thus the other questions raised by these prayers may become material, we deem it proper to state the opinion of this Court thereon.

1st. It would not be necessary for the plaintiffs to rescind or offer to rescind the contract, in order to enable them to recover, provided there existed no other objection to their suit.

2d. The existence of the contract, evidenced by the note given by the appellees to secure the balance of the purchase money, whereby they are expressly entitled to retain, out of such balance, any loss they may incur by reason of any person claiming the property purchased, constitutes in itself no defence to this action, except so far as the question of damages is concerned. The said balance, if it remain unpaid, being first applicable in reduction of the plaintiffs' demand.

*Judgment reversed and procedendo ordered.*

(Decided 24th May, 1867.)